**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| SHAKEENA KING, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> CORELOGIC CREDCO, LLC : <br> 10277 Scripps Ranch Blvd. : <br> San Diego, CA 92131 : <br> : <br> Serve: Secretary of the Commonwealth : <br> : <br> Defendant. : <br> _____: | Civil Action No. __3:17cv761_____ |

**CLASS ACTION COMPLAINT**

COMES NOW the Plaintiff, SHAKEENA KING, ("Plaintiff"), by counsel, and for her Complaint against the Defendant, she alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for statutory, actual, and punitive damages, costs, and attorney's fees brought pursuant to 15 U.S.C. § 1681, *et seq.* (the Fair Credit Reporting Act or "FCRA").

2. The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that a consumer report is published and requires that the report be as accurate as possible. 15 U.S.C. § 1681e(b).

3. Defendant Corelogic Credco, LLC ("Corelogic" or "Defendant") is a "reseller" of consumer reports that assembles and merges information contained in the databases of the "Big 3" nationwide consumer reporting agencies—Experian, Equifax, and Trans Union. Defendant "resells" this merged information in what is commonly referred to as a "tri-merged credit report" to various third parties, such as mortgage lenders. Like a traditional consumer reporting agency ("CRA"), the FCRA mandates that resellers use reasonable procedures to assure maximum possible accuracy whenever they publish a consumer report. Defendant does not believe that it is a CRA. Instead, it asserts that it is merely a conduit of information and, therefore, uses no procedures whatsoever to assure the accuracy of the information it publishes.

4. Experian, Equifax, and Trans Union have a long history of government enforcement actions, consumer complaints, and lawsuits *establishing* that they unreasonably and routinely mix the credit files and information of one consumer with credit reports of another consumer. Despite the CRAs' this long and well-document history, Defendant purchases consumer reports from the CRAs to combine and resell them without any policies or procedures in place to ensure that the accuracy of the information, even when the information is obviously incorrect and does not belong to the consumer of interest.

5. This lawsuit challenges Defendant's failure to adopt any procedures to prevent publication of mixed credit files. In this case, representative of numerous others, Defendant published grossly inaccurate credit information concerning Plaintiff to her mortgage company even though it was apparent—on the face of the report—that Plaintiff's Equifax credit report was mixed with her sister, Kywanna King. Plaintiff was denied a mortgage loan because Defendant simply regurgitated the inaccurate information to Plaintiff's potential lender, without reviewing the information to make sure that it belong to her before selling it to the mortgage company.

## JURISDICTION

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

7. Venue is proper in this District and Division because a substantial part of the events and omissions giving rise to the claim occurred in this District and Division

## PARTIES

8. Plaintiff Shakeena King is a natural person living within the Richmond Division and is a "consumer" as defined by 15 U.S.C. §1681a(c).

9. Corelogic is a California limited liability company conducting business in Virginia as a consumer reporting agency and "reseller" as defined by § 1681a(u) of the FCRA. At all times relevant to this Complaint, Corelogic was a business engaged in the assembly of information contained in the databases of Equifax, Experian, and Trans Union for the purpose of furnishing such information to third parties.

## FACTS

*Overview of Defendant's Notice Regarding Mixed File Inaccuracies*

10. A mixed file occurs when one consumer's credit information is placed in someone else's the credit report.

11. Mixed files occur largely because the CRAs' computers use lax thresholds to match data to a consumer.

12. As an industry participant and ally of the Big-3 CRAs, Defendant has substantial notice and knowledge regarding the problem with mixed files.

13. As early as 1991, the Federal Trade Commission ("FTC") brought an enforcement action against Experian [formerly TRW, Inc.] in the United States District Court for the Northern District of Texas. *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Texas 1991). In settling the

enforcement action, Experian agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files.

14. Nineteen state attorneys general brought another enforcement action against Experian that resulted in a similar consent order as described in the previous paragraph, including the procedures related to the prevention of mixed files and procedures to reinvestigate disputes resulting from mixed files. *See TRW, Inc. v. Morales*, Civil Action No. 3-91-1340-H (N.D. Tex. 1991).

15. Similar enforcement actions were brought against Trans Union and Equifax in 1992, which resulted in consent orders where both bureaus agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files.

16. Despite these consent orders, Experian, Equifax, and Trans Union's computer systems continue to cause these mixes because they do not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. They do this in order to sell more credit reports and to ensure their customers receive the universe of potentially negative information pertaining to a consumer.

17. All three credit bureaus have been sued repeatedly for failing to prevent mixed consumer files, including an $18.6 million-dollar verdict against Equifax after it placed the information of another consumer into the plaintiff's record with the same name and failed to correct its errors. *Miller v. Equifax Information Services*, LLC, 3:11-cv-1231 (D. Or. 2011); *see also Calderon v. Experian Info. Sols., Inc.*, 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho 2012); *Howley v. Experian Info. Sols., Inc.*, Civil Action No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Sols., Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v.*

4

*Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Sols.*, 2004 U.S. Dist. LEXIS 10705, *20 (E.D. Tex. 2004); *Cartwright v. Experian Info. Sols., Inc.*, Case No. CV 09-427 (C.D. Cal. 2009); *Campbell v. Experian Info. Sols., Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Sols., Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001); *Williams v. Equifax Info. Servs., LLC*, No. 48-2003-CA-9035-O (Orange County 2007); *Apodaca v. Discover Financial Services*, 417 F. Supp. 2d 1220 (D.N.M. 2006); *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.,* Civ. No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *Thomas v. Trans Union*, C.A. No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union*, (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union, LLC*, Civ. No. 3:11-cv-1317 (D. Conn. Aug. 17, 2011).

18. There have also been numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files brought in this District. *See, e.g.*, *Mullins v. Equifax Info. Servs., LLC*, 3:05cv888, 2007 WL 2471080 (E.D. Va. August 27, 2007); *Saunders v. Branch Banking and Trust Co.*, 3:05cv731 (E.D. Va.); *Ross v. Experian Info. Sols, Inc.*, 3:09cv144 (E.D. Va. 2009); *Baker v. TransUnion, LLC*, 3:07-cv-107 (E.D. Va. 2007); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009); *Sloane v. Equifax Info Servs. LLC*, 510 F.3d 495 (4th Cir. 2007); *Abraham Lopez, Jr., v. Trans Union, LLC,* Civil Action No. 1:12-cv-902 (E.D. Va. 2012); *Alejandro Lopez, Sr. v. Trans Union, LLC*, Civil Action No. 1:12cv1325 (E.D. Va. 2012); *Chaudhary v. Experian Info. Sols., Inc.*, Civil No. 3:13-cv-577 (E.D. Va. 2013);

5

*Valdez-Estep v. Equifax Info. Servs. LLC*, Civil No. 1:13-cv-00007 (E.D. Va. 2016); *Kang v. Equifax Info. Servs. LLC*, Civil No. 1:15-cv-01406 (E.D. Va. 2015); *Moulvi v. Equifax Info. Servs. LLC*, Civil No. 1:15-cv-01073 (E.D. Va. 2015); *Barclay v. Equifax Info. Servs. LLC*, Civil No. 1:15-cv-00691 (E.D. Va. 2015); *Robinson-Huntley v. Equifax Info. Servs. LLC*, Civil No. 1:15-cv-00626 (E.D. Va. 2015); *Villaroel v. Experian Info. Sols., Inc.*, Case No. 1:16-cv-01211 (E.D. Va. 2016); *Bennett v. Experian Info. Sols., Inc.*, Case No. 3:16-cv-00736 (E.D. Va. 2016); *King v. Experian Info. Sols., Inc.*, Case No. 3:16-cv-00725 (E.D. Va. 2016); *Bridgett v. Trans Union, LLC*, Case No. 1:16-cv-01112 (E.D. Va. 2016); *Shanks v. Experian Info. Sols., Inc.*, Case No. 3:16-cv-00616 (E.D. Va. 2016).

19. Despite the abundance of these lawsuits, including in the Eastern District of Virginia, Experian, Equifax, and Trans Union knowingly ignore their mixed file problems and continue to use flawed matching procedures.

20. As an industry participant and major business partner of the Big-3 CRAs, Defendant has substantial notice and knowledge of the CRAs' mixed file problems.

### *Defendant Publishes a Grossly Inaccurate Report Regarding Plaintiff*

21. On January 31, 2016, Plaintiff applied for a mortgage loan with NVR Mortgage ("NVR").

22. As part of this process, NVR requested a copy of Plaintiff's credit report from Corelogic.

23. Corelogic furnished a tri-merge credit report to NVR dated January 31, 2016, which contained data that CoreLogic obtained from Equifax, Experian, and Trans Union.

6

24. The credit report that Corelogic furnished to NVR attributed many derogatory accounts to the Plaintiff, including a judgment, a medical collection account, a car repossession, a mortgage account, and several credit cards that had been charged off by the original creditor.

25. This information was inaccurate—these derogatory debts and accounts actually belonged to Plaintiff's sister, Kywanna King.

26. Corelogic's placement of the inaccurate information in Plaintiff's consumer report was caused by Corelogic's failure to implement and follow reasonable procedures to assure that the information it was publishing regarding consumers, like the Plaintiff, was as accurate as possible.

27. If Corelogic had reasonable procedures (or any procedures whatsoever) it could have easily determined that the information it published regarding Plaintiff was incorrect and belonged to her sister.

28. Most notably, the identification information that Equifax reported to Corelogic indicated that the information belonged to "Kywanna L. King," which should have alerted Corelogic to the fact that the information was not responsive to NVR's request, which sought information about Shakenna King.

29. Additionally, the social security number that Equifax attributed to Plaintiff did not match the social security number that NVR provided when it requested the report. It also did not match the social security number that Experian and Trans Union attributed to the Plaintiff.

30. Likewise, the date of birth that Equifax attributed to Plaintiff did not match the date of birth that NVR provided when requesting the report or the date of birth that Trans Union attributed to the Plaintiff.

31. Despite the plethora of consumer complaints and lawsuits regarding mixed files, Corelogic continues to obtain consumer reports from the CRAs to resell them without any policies or procedures in place to assure that information it receives is accurate and actually belong to the consumer of interest of its customer.

32. Instead, Defendant blindly accepts whatever it obtains from the CRAs and regurgitates the information into its reports without any procedure to verify that the information is accurate.

33. It does so even when there is an apparent inaccuracy.

34. For example, Corelogic uses an automated process, which flags name, social security number, and date of birth variations to highlight information that is potentially incorrect.

35. Nonetheless, Corelogic resells any information that it obtains from the CRAs, even when these flags are present, thereby shifting the burden of determining accuracy to its customers and consumers.

36. This automated process was used in this case—the credit report that Corelogic sold to NVR indicated that Equifax's reported identification information was different than the information that NVR requested because it contained a name variation and "SSN VARIATION BY 2 DIGITS." (*See* Excerpt of Jan. 31, 2016 Credit Report, attached as Ex. 1).

37. Consistent with its standard policies, Corelogic nonetheless provided the credit report to NVR without any additional review of the flagged information, knowing that it was providing information that likely did not belong to the Plaintiff.

38. Upon information and belief, Corelogic has actual knowledge of the CRAs' mixed file problems, including personal identifying information variations, but deliberately

ignores the problems because reviewing and/or cross-checking the data would reduce its "bottom line."

39. Moreover, Defendant failed to adopt any procedures even though its sources have been subject to court decisions critical of similar conduct. *Miller v. Equifax Info. Servs., LLC.*, 2014 WL 2123560, at *5 (D. Or. May 20, 2014) ("Miller's expert testified about cases in which juries returned verdicts against Equifax based on allegations of mixed files, and Equifax's own representative testified it is Equifax's policy to investigate and to correct files only after a lawsuit is filed."); Federal Trade Comm., 40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary of Interpretations, July 2011, at 67 ("However, when a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.").

40. In addition, the Defendant has been sued for selling mixed consumer reports. *Ocasio v. CoreLogic Credco, LLC*, No. CV 14-1585 (NLH/JS), 2016 WL 1717581 (D.N.J. Apr. 29, 2016); *Fesniak v. Equifax Mortg. Servs. LLC*, No. CIV. 14-3728 NLH/KMW, 2015 WL 2412119, at *1 (D.N.J. May 21, 2015).

41. At all times relevant hereto, Defendant's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, Defendant's conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these errors that its own system flagged as likely inaccurate prior to furnishing reports.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### Class Claim

42. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

43. **The 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows:

> All natural persons who were the subject: (1) of a consumer report furnished by the Defendant to a third party within the five years preceding the filing date of this Complaint; (2) where the personal identifying information section of its consumer report contained a name, date of birth, or social security number that: (i) did not match the information provided by the person requesting the report or (ii) varied from the information provided by the other consumer reporting agencies. Plaintiff is a class member.

44. **Numerosity**. Upon information and belief, Plaintiff alleges that the class is so numerous that joinder of the claims of all class members is impractical. The class members' names and addresses are identifiable through the Defendant's documents and records and they may be notified of the pendency of this action by publication or mailed notice.

45. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant blindly includes whatever information it obtains from the CRAs into its reports without any procedure to assure the accuracy or completeness of the underlying data even if its system flags the information as potentially inaccurate; (b) whether this conduct violated the FCRA; and (c) whether the violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the Plaintiff's and putative class members' rights.

46. **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all claims are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. §1681e(b). This claim challenges the Defendant's consumer reporting procedures and does not depend on any individualized facts. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. Such damages are appropriate in circumstances like this one where injuries are particularized and concrete, but difficult to quantify, rendering the recovery of class statutory damages ideal and appropriate. In addition, Plaintiff is entitled to the relief under the same causes of action as the other class members.

47. **Adequacy**. Plaintiff will fairly and adequately protect the class's interests. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

48. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a. As alleged above, the questions of law or fact common to the class members predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. The statutory and punitive damages sought by each member are such that the individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in

the case.

      b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

49.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it published and maintained regarding the Plaintiff and the putative class members by blindly publishing the information it received from the CRAs even when it did not match the name, date of birth, or social security number that its customer submitted when requesting the report.

50.    Defendant's violation of 15 U.S.C. § 1681e(b) was willful, rendering the Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendant was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

51.    In addition, the Plaintiffs and each class member suffered an actual injury because of the Defendant's violation, as alleged herein.

52. Plaintiff and the putative class members are entitled to recover statutory damages, punitive damages, costs, and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff moves for class certification and for judgment against the Defendant for statutory damages, punitive damages, and attorneys' fees and costs, as well as any other relief that the Court finds just and appropriate.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**SHAKEENA KING**

By:___*/s/ Kristi C. Kelly*_____
      Counsel

Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA 22030
(703) 424-7570 – Telephone
(703) 591-0167 – Facsimile
E-mail: kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com
E-mail: casey@kellyandcrandall.com

*Counsel for Plaintiff*